AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

**for the**
**Western District of New York**

**United States of America**

**v.**

**ADAM EISENBERG,**

_Defendant_

Case No. 24-MJ-__4103____

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about August 2, 2023; May 30, 2024; and June 27, 2024, in the Western District of New York, Adam EISENBERG committed violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Possession with Intent to Distribute, and Distribution of Fentanyl); and further, that on or about August 2, 2023, in the Western District of New York, EISENBERG committed a violation of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_Complainant's signature_

JEREMY CINGRANELLI, Special Agent
Federal Bureau of Investigation

_Printed name and title_

Affidavit and Criminal Complaint submitted Electronically via email in .pdf form. Oath administered and contents and signature attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on July __29___, 2024

City and State:  Rochester, New York

_Judge's signature_

HONORABLE MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE

_Printed name and title_

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

     -*v*-

24-MJ- 4103

ADAM EISENBERG,

                         Defendant.

---

STATE OF NEW YORK  )
COUNTY OF MONROE  ) SS:
CITY OF ROCHESTER  )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeremy Cingranelli, being duly sworn, state as follows:

1.     I am a Special Agent for the Federal Bureau of Investigation (FBI) and as such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.     I have been an FBI Special Agent since February 2022 and I have been assigned to the FBI Resident Agency in Rochester, New York, during my entire tenure with the FBI. Prior to becoming an agent, I attended and successfully completed five months of training at the FBI Academy in Quantico, Virginia, where I received instruction regarding federal law enforcement, including the investigation of drug traffickers and firearms offenses. My duties involve investigating federal crimes including gang-criminal enterprises, and drug trafficking

organizations involved in unlawful possession of firearms, distribution of controlled substances, and conspiracies associated with these offenses. Over the course of my duties, I have conducted interviews of witnesses and subjects, handled confidential informants, participated in physical and electronic surveillance, executed search and arrest warrants, conducted consensually recorded conversations and meetings between confidential informants and subjects.

### Purpose of Affidavit

3.    This affidavit is made in support of a Criminal Complaint charging ADAM EISENBERG (hereinafter "EISENBERG") with violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute, and Distribution of, Controlled Substances) and Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm).

4.    The information contained in this affidavit is based upon my personal knowledge and observations, my training and experience, conversations with other law enforcement officers, and the review of documents, records and recordings. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested criminal complaint, this affidavit does not set forth all of my knowledge regarding this matter. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the defendant committed the above-described offenses. In support thereof, I respectfully state the following:

### Background of the Investigation

5.    Since November 2022, the FBI has been conducting a criminal investigation of Adam EISENBERG and others known and yet unknown, in connection with possible

2

narcotics trafficking and firearms related crimes. The investigation to date has revealed that EISENBERG and others are members of a narcotics distribution organization that distributes fentanyl in the Rochester, New York area on a daily basis.

6.     On November 27, 2022, a confidential source (CS-1)[1] contacted the FBI and advised agents that 56 Bismark Terrace was a "hotspot" for pure fentanyl and that the individual who was selling the fentanyl is a male who goes by the name of "Ace", and that Ace lived at 56 Bismark Terrace with his young daughter and another woman. On December 1, 2022, CS-1 advised agents that Ace's phone number was 585-448-8855.

7.     Since January 1, 2023, CS-1 has conducted over twelve controlled purchases of fentanyl from EISENBERG at the direction of the FBI. All of the buys have involved CS-1 communicating with EISENBERG prior to the deal to make arrangements for the transaction. Investigating agents conducted physical and video surveillance of these transactions and obtained clear photographs of the individual providing fentanyl to CS-1. There have also been multiple operations during which CS-1 purchased a firearm from EISENBERG at the direction of the FBI.

**Prior Felony Convictions**

8.     EISENBERG has two (2) prior felony convictions and is thus prohibited from possessing firearms and ammunition. First, on January 5, 2010 in Monroe County Court,

---

1 CS-1 has provided information to the FBI for at least two years. CS-1 has had direct and indirect access to several individuals in various parts of the City of Rochester who are distributing narcotics and who possess guns in furtherance of their distribution. The FBI has corroborated this information multiple times over the past two years through various means including but not limited to surveillance, other confidential sources, and police reports. CS-1 has been providing this information voluntarily and has been receiving payments from the FBI only since the beginning of 2023. Information from CS-1 is responsible for a seizure of significant quantities of controlled substances and United States currency.

EISENBERG was convicted of Criminal Possession Controlled Substance in the Fifth Degree, in violation of NY Penal Law Section 220.06(1). He was sentenced to five (5) years of probation. On February 6, 2018, in Ontario County Court, EISENBERG was convicted of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law Section 220.39(1). He was sentenced to five (5) years imprisonment followed by three (3) years of post-release supervision.

### Controlled Buy Operations

9.      As previously indicated, since 2022 the FBI has conducted numerous controlled buy operations in which a confidential source has purchased fentanyl from EISENBERG. All of these operations have occurred in the Western District of New York, and while under surveillance. Audio and visual surveillance was also conducted in each instance. Prior to each controlled buy operation CS-1 was provided with a quantity of official funds with which to purchase fentanyl and other items from EISENBERG, such as firearms. The controlled buys were generally preceded by communications via cellular phone between EISENBERG and CS-1, including through recorded controlled calls monitored by the FBI. Prior to each buy, CS-1 and CS-1's vehicle would be searched for drugs, money, or other contraband to ensure that any narcotics or firearms obtained from EISENBERG could not have come from an alternative source. Three of these controlled buy operations are described below.

### August 2, 2023 Controlled Buy

10.     During the course of the investigation, CS-1 has purchased several firearms and machine gun conversion devices (MCDs[2]) or "switches" directly from EISENBERG. A

---

2 The MCDs purchased from EISENBERG have been submitted to the Monroe County Crime Laboratory for analysis and the FBI is awaiting results as to their functionality.

"switch" or alternatively an "auto sear," is an illegal machine gun conversion device that enables a conventional semi-automatic pistol to function as a fully automatic firearm. Federal law prohibits the possession of a machinegun and defines as a machinegun the converted firearm or a device designed or intended for use in converting a firearm into a machinegun. Furthermore, under federal law, the conversion device is illegal and classified as a machinegun whether it is affixed to a firearm or not.

11.    On the days and weeks leading up to a controlled purchase of fentanyl, a firearm, and a machine gun conversion device that took place on August 2, 2023, CS-1 and EISENBERG had several conversations about illegal narcotics and firearms via electronic messages. Investigating agents examined CS-1's phone in connection with these communications, observed that they were between CS-1 and EISENBERG and retained copies of the communications. In a July 26, 2023, message, EISENBERG wrote, "Brand new glock 43 Black and Gold." On July 27, 2023, after CS-1 had agreed to purchase the Glock and switch, EISENBERG again sent a message that read "Putting switch in." Accompanying the message was a photo which displayed someone holding a switch. The black and gold Glock could also be seen in the photo.

12.    On August 2, 2023, CS-1 met with agents at a predetermined location to prepare for the controlled buy operation. It was anticipated that CS-1 would purchase a firearm, a switch, and a quantity of fentanyl from EISENBERG in the area of Bismark Terrace, Rochester, New York. Members of the investigative team searched CS-1 and his/her vehicle for drugs and contraband, which yielded negative results. CS-1 was provided with a recording device to consensually record the transaction, as well as official funds to conduct the transaction. With a surveillance team in place, CS-1 left the meeting location and was

surveilled as he/she travelled to the area of Bismark Terrace.

13.    By utilizing a covert camera, agents observed CS-1 arrive in the area of Bismark Terrace, Rochester, in his/her vehicle. Agents observed via covert camera, EISENBERG exit the front door of 56 Bismark Terrace and approach CS-1's vehicle. During the transaction CS-1 was equipped with a recording device which captured EISENBERG when he said, "Switch is in here. Take the top apart. Slide it in the back." As the transaction continued, EISENBERG stated, "And the grams right here." Based on my training and experience, when EISENBERG referred to "the grams" I believe he was referring to the grams of fentanyl CS-1 purchased from him during this transaction.

14.    Once the controlled buy was complete, agents observed CS-1 leave the area of Bismark Terrace. After leaving the area CS-1 traveled to a pre-arranged location while under surveillance to meet up with agents. Once with agents, CS-1 provided them with a clear plastic bag containing purple powder. This powder was field tested and yielded a positive result for fentanyl. Additionally, CS-1 provided agents with a black and gold Glock handgun and a switch.

15.    Upon further review of the Glock handgun, agents identified the serial number as BWKZ128. The FBI ran a national trace on the firearm with the assistance of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The trace results indicated that the firearm was purchased in March of 2022 in Cleveland, Ohio. Additionally your affiant spoke with ATF Special Agent and NEXUS expert, Andrew Farnham, and confirmed that Glock firearms are not manufactured in New York State. Therefore, by virtue of its presence in Rochester, the firearm would have had to have traveled in interstate or foreign commerce, sometime prior to August 2, 2023.

**May 30, 2024 Controlled Buy**

16.    On May 30, 2024, prior to another anticipated controlled buy, CS-1 met up with FBI agents at a pre-arranged staging area. CS-1 and his/her vehicle was searched for narcotics, U.S. currency and contraband, all with negative results. CS-1 was also provided with an audio recording/transmitting device to consensually record any conversations with EISENBERG or other co-conspirators. CS-1 was also provided with a sum of official funds to complete the anticipated transaction with EISENBERG. While in the presence of agents, CS-1 placed a recorded telephone call to EISENBERG. EISENBERG directed CS-1 to meet at a particular location.

17.    According to a court ordered GPS tracking device installed on EISENBERG's Dodge Nitro, EISENBERG was in the area of Remington and Oscar Street when he received the phone call from CS-1. The GPS tracker data shows that EISENBERG drove directly from the area of Remington and Oscar Street to 41 Ferris Street.[3] Both GPS tracker data and CCTV footage showed EISENBERG's Dodge Nitro arrive on Ferris Street at approximately 1:52 p.m. At approximately 1:55 p.m., agents observed via CCTV as EISENBERG entered the front door of 41 Ferris Street. At approximately 2:08 p.m., agents observed EISENBERG exit the front door of the residence and walk in the direction of the Dodge Nitro, which was observed driving away from Ferris Street at approximately 2:08 p.m.

---

3 Over the course of this investigation,, EISENBERG moved from 56 Bismark Terrace to 41 Ferris Street, Rochester, New York. Based on numerous surveillance observations of EISENBERG at 41 Ferris Street, I believe this is now his primary residence.

18.    At approximately 2:09 p.m., agents observed EISENBERG arrive at the location where he had directed CS-1 to meet him during the recorded telephone call. Once EISENBERG arrived, CS-1 exited his/her vehicle and entered EISENBERG's Dodge Nitro. CS-1 was equipped with a recording device for the purpose of consensually recording the anticipated meeting between CS-1 and EISENBERG.

19.    After the transaction was completed, CS-1 left the area and met with agents. Once CS-1 arrived at the predetermined location, he/she provided the agents with a quantity of a white powdery substance contained inside of a clear plastic baggie. CS-1 indicated these were the materials he/she had just purchased from EISENBERG. Agents conducted a field test of the substance, and it returned a positive result for the presence of fentanyl.

**June 27, 2024 Controlled Buy**

20.    On June 27, 2024, a plan was formulated for CS-1 to purchase fentanyl from EISENBERG at the direction of the FBI. Prior to the operation, CS-1 met with agents at a predetermined meeting location. CS-1 was provided with FBI funds to purchase fentanyl from EISENBERG. CS-1 and his/her vehicle was searched for contraband and narcotics, which yielded negative results. While in the presence of agents, CS-1 placed a recorded telephone call to EISENBERG. EISENBERG directed CS-1 to meet at a particular location to complete the deal later that day.

21.    According to the court authorized GPS tracker installed on the Dodge Nitro that is driven by EISENBERG, he was in the area of Bay Street when CS-1 placed the

recorded telephone call. The GPS shows the Nitro drove directly from Bay street to the area of 41 Ferris Street without stopping. He arrived on Ferris Street at approximately 1:38 p.m. CCTV captured EISENBERG walking down the driveway of 41 Ferris Street and out of view of the camera at approximately 1:45 p.m. At approximately 1:57 p.m., EISENBERG was captured on the CCTV walking back up the driveway from the residence to the street.[4] The GPS tracker shows EISENBERG then drove directly from Ferris Street to the meeting location to conduct the narcotics transaction with CS-1. EISENBERG arrived at the meeting location at approximately 2:00 p.m. Once he arrived, CS-1 exited his/her vehicle and entered the passenger seat of the Dodge Nitro and conducted the narcotics transaction. During the transaction, CS-1 was equipped with a recording device. The device captured EISENBERG and CS-1 discussing the price for larger quantities of fentanyl.

22.    After the deal was completed, CS-1 exited the Nitro. CS-1 drove directly to a predetermined meeting location and provided agents with a purple powdery substance tied off in a clear bag, which he/she purchased from EISENBERG. Agents conducted a field test and it tested positive for the presence of fentanyl.

## CONCLUSION

23.    Based upon the foregoing, I submit there is probable cause to believe that on or about August 2, 2023; May 30, 2024; and June 27, 2024, in the Western District of New York, Adam EISENBERG committed violations of Title 21, United States Code, Sections 841(a)(1)

---

4 The positioning of the CCTV camera is such that it cannot capture individuals going through the door, or out of the door to the house. However, based on my training and experience, as well as the observations described herein, I believe EISENBERG went to 41 Ferris Street before the meet up with CS-1 to obtain a quantity of fentanyl.

9

and 841(b)(1)(C) (Possession with Intent to Distribute, and Distribution of Fentanyl); and further, that on or about August 2, 2023, in the Western District of New York, EISENBERG committed a violation of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm).

JEREMY CINGRANELLI
Special Agent
Federal Bureau of Investigation

Affidavit and Criminal Complaint submitted
Electronically via email in .pdf form. Oath administered
and contents and signature attested to me as true and
accurate telephonically pursuant to Fed.R.Crim.P. 4.1
and 4(d) on July 29 , 2024.

HONORABLE MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF NEW YORK